[No. 28993. Department One. July 16, 1943.]

A. W. RICHEY *et al., Appellants,* v. J. A. BOLTON *et al., Respondents.*[1]

[1]Reported in 140 P. (2d) 253.

*Simmons & McCann,* for appellants.

*Gagliardi & Ursich,* for respondents.

STEINERT, J.—Plaintiffs instituted this action to recover a real estate broker's commission. The trial court sustained the defendants' demurrer to the amended complaint. Plaintiffs declined to plead further, and the court thereupon entered an order dismissing the action. Plaintiffs appealed.

The question before us is whether the amended complaint states a cause of action. The allegations of the pleading may be summarized as follows: Appellants, A. W. Richey and William Heian, are duly licensed real estate brokers in the state of Washington. Respondents, J. A. Bolton and his wife, Ethel Bolton, are the purported owners of a certain lot of ground in Pierce county. On or about October 21, 1938, respondents executed a written contract wherein they agreed to sell and convey the lot to R. Snavely and wife in exchange for certain real estate in Klickitat county which the Snavelys agreed in the contract to sell and convey to respondents. Sometime prior to the execution of the contract by respondents, appellants had obtained the Snavelys' signatures thereto. On October 21st, and after both contracting parties had signed the instrument, respondents delivered it to the appellants.

The exchange contract described the property to be conveyed by the Snavelys, who were therein designated the first party, as

"A certain Real estate contract and Chatt*le* mortgage in the proximate sum of $35,500.00 covering property *known as the Ross Dairy located at Goldendale, Washington,* together with [certain stock, equipment, furniture, fixtures, etc., as set forth in an inventory attached to the contract, subject to certain mortgages totalling $9,000.]." (Italics ours.)

The property to be conveyed by the respondents, des-

ignated as the second party in the contract, was described therein as

"2624 North Proctor Street, Tacoma, Wash. being legally described as Lot 5, in block 26. North 41' '8 of the East 110' in the City of Tacoma, County of Pierce, State of Washington, together with [certain furniture, fixtures and equipment used in operating the premises, subject to an incumbrance of $10,000 and also an outstanding lease.]"

The exchange contract further provided that the the values of the respective properties, over and above the existing incumbrances, should be deemed equivalent to each other. It also provided that if the title to either, or both, of the properties should not be good, or could not be made good within ninety days,

". . . then this agreement *except the provisions concerning commissions* shall be void, provided that either party may elect to take the title of the other party as it then is, and in such case the other party shall convey as agreed, provided that written notice of such election shall be given personally or by registered mail prior to the expiration of said ninety days, said party also tendering performance." (Italics ours.)

Finally, the exchange contract contained this provision for the payment of broker's commissions:

"The parties shall pay broker's commissions *for negotiating this transaction at or before the consummation of contract,* as follows: first party [Snavely and wife] to pay Richey & Hei*n*an [appellants herein] the sum of No Commission. Dollars, ($———) and second party [respondents] to pay Richey & Heian the sum of Seventeen Hundred and fifty dollars ($1750.00) provided that, if either party shall fail to furnish good or acceptable title, or to perform or comply with his part of this contract within the time or manner specified, the aggregate of such commissions shall be paid by the defaulting party immediately after the occurrence of the default, and the other party shall be released from all liability for commission. Earnest money shall be first applied towards payment of commissions." (Italics ours.)

At all times after the execution of the exchange contract, the Snavelys were ready, able, and willing to perform it in accordance with its terms. Respondents, however, failed, neglected, and refused to complete the exchange provided for in the agreement, although a reasonable time for performance on their part had long since expired.

Appellants thereafter made demand of the respondents for payment of the commission provided in the contract, but respondents failed and refused to comply with the demand.

Respondents contend that the allegations of the amended complaint, as above summarized, will not support a recovery by appellants, for two reasons: (1) because the exchange contract shows upon its face that it is not legally enforcible, owing to the indefinite and insufficient description of the properties to be conveyed to respondents by the Snavelys; and (2) because there is no allegation that the exchange contract was made for the benefit of appellants or that appellants had given any consideration therefor.

Apparently the demurrer was sustained by the trial court upon those grounds. It is but fair to state, in this connection, that the judge who entered the order dismissing the action, and from whose judgment this appeal is taken, is not the judge who sustained the demurrer. The order of dismissal was entered by the acting judge simply because appellants declined to plead further after the former judge had sustained the demurrer to their amended complaint.

Respondents' first contention is based upon the rules enunciated in the following cases: *Neely v. Lewis,* 38 Wash. 20, 80 Pac. 175; *Rogers v. Lippy,* 99 Wash. 312, 169 Pac. 858; *Farley v. Fair,* 144 Wash. 101, 256 Pac. 1031; *Grammer v. Skagit Valley Lbr. Co.,* 162 Wash. 677, 299 Pac. 376.

In the *Neely* case, *supra,* the agreement between the plaintiff brokers and the defendant owner was simply

that, "if" a trade between the defendant and a third party owner should be effected, the defendant would pay the brokers a commission of two hundred fifty dollars. The two property owners thereafter entered into a written agreement for the exchange of their respective properties upon terms "to be arranged in a satisfactory manner to both parties." The trade was not carried out, however, and the defendant thereupon refused to pay the commission.

Upon the appeal in that case, it was held that, in order to recover, the brokers were required to show that they had procured a purchaser ready, able, and willing to take the property on the terms upon which the brokers had been authorized to make the sale, or on terms satisfactory to the owner. As was pointed out in the opinion, however, the exchange contract was not completed and could not be specifically enforced because the minds of the contracting property owners had never definitely met on the terms of sale. This court therefore concluded that the brokers had not complied with the terms of their contract, in that they had not procured a purchaser ready, able, and willing to take the property on the terms upon which the brokers had the property for sale, or on terms satisfactory to the owner of the property. Obviously, the situation which obtained in that case is entirely different from the one established in the present instance.

The *Neely* case is of no controlling force here, because in that case the brokers' right to commission was conditioned wholly and solely upon the future consummation of a trade, which never materialized; while, in this case, the respondents presently agreed to pay the brokers a commission for "negotiating this transaction," which had then culminated in the execution of a written contract between the two prospective exchanging parties. Moreover, in this case, it was stipulated in the agreement that payment was to be

made "at or before the consummation of the contract" between the exchanging parties. Further reference to these factual distinctions will be made later herein.

The other three cases, *supra,* relied upon by respondents turn upon the effect of chapter 58, Laws of 1905, p. 110 (Rem. Code, § 5289, now appearing as Rem. Rev. Stat., § 5825 [P. C. § 7745]), which reads:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) An agreement *authorizing or employing an agent or broker* to sell or purchase real estate for compensation or a commission." (Italics ours.)

■ The three cases latterly referred to, and a number of others in this jurisdiction, lay down the rule that, under the provisions of that statute, a broker's contract for *employment* must contain a legally sufficient description of the property to be sold or purchased. It is important to note, however, that in each of the cases cited by respondents the broker was *employed to procure* a purchaser of property or *to effect* a sale thereof; that is to say, the contract of employment was for the performance of certain definite services *in the future.*

In the case before us, the exchange contract, in so far as it relates to appellants, does not purport to be a contract of *employment,* but is, instead, a direct promise to pay for services *already performed.* The contract did not confer authority upon the appellants, as brokers, to make a sale in the future, nor did it require of them the performance of any future services. The services in which they were concerned had theretofore been rendered by them. Furthermore, payment of the specified compensation was not made dependent upon an actual exchange of properties between the contracting owners, but became due "at or

before the consummation of contract" between such owners. In other words, the commission was payable regardless of whether the owners subsequently failed to furnish good title or for some other reason failed to complete the sale. These factual differences distinguish this case from those relied upon by the respondents.

■ Assuming, without deciding, that the description of the property which the Snavelys were to convey to respondents was insufficient, still, under the following authorities, the statute of frauds does not apply: *Muir v. Kane,* 55 Wash. 131, 104 Pac. 153, 26 L. R. A. (N. S.) 519, 19 Ann. Cas. 1180; *Henneberg v. Cook,* 103 Wash. 685, 175 Pac. 313; *Grant v. Ten Hope,* 117 Wash. 531, 201 Pac. 750; *White v. Panama Lbr. & Shingle Co.,* 129 Wash. 189, 224 Pac. 563; *Sams v. Olympia Holding Co.,* 153 Wash. 254, 279 Pac. 575; *Palmer v. Stanwood Land Co.,* 158 Wash. 487, 291 Pac. 342; *Peeples v. British American Consolidated Properties, Ltd.,* 163 Wash. 353, 1 P. (2d) 235; *Johnson v. Savage,* 163 Wash. 478, 1 P. (2d) 890; *Realty Mart Corp. v. Standring,* 165 Wash. 21, 4 P. (2d) 1101.

In the case of *Muir v. Kane, supra,* a broker's suit for commission was based upon a written agreement between a vendor and a vendee of real property wherein the vendor agreed to "pay two hundred dollars ($200) of the purchase price to B. L. Muir & Co. for services rendered." The vendor resisted the action on the ground that the writing relied on by the broker was insufficient under the statute above quoted, and that it was not an agreement authorizing or employing the broker to sell the property for compensation or commission. Meeting that contention, this court said:

"It is clear that this writing was not intended as an agreement authorizing the respondent [broker] to sell the real property mentioned. In fact, it was executed after that service had been performed, and is an agreement in writing to pay a fixed sum for a past service, not a service to be performed in the future.

The question for determination is its validity as a promise to pay for a past service."

The court then held that services rendered by a real estate broker, without a written agreement authorizing such activities, created a moral obligation on the part of the owner to pay therefor, and that such moral obligation was sufficient consideration to support a subsequent written promise to pay for the services previously rendered.

The case of *Grant v. Ten Hope, supra,* involved a suit by a broker upon a contract made by other individuals for the exchange of their properties. The exchange contract contained the following provision with reference to compensation to the broker:

"It is further agreed that the parties of the first part shall pay G. D. Grant $500 as their share of the commission for his services *in carrying out this transaction,* to be paid as follows: $50 in cash; the balance in three equal payments in 30, 60 and 90 days. It is further agreed that the party of the second part shall pay G. D. Grant as his share of the commission $300 for services of said Grant *in this transaction.*" (Italics ours.)

The suit was brought against both of the contracting property owners for recovery of the specified amounts of commission, although the exchange contract itself was never consummated by the two owners.

Affirming a judgment of recovery, this court said:

"The statute (Rem. Code, § 5289) provides that, 'an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission' shall be void unless in writing and signed by the party to be charged. Clearly this is not such a contract, as it purports to give no authority to the agent or broker, and, as we read it, the broker's services had already been performed in bringing the parties together and procuring the contract to be signed. The things still to be done were such as must be done by the parties themselves, and while it may have been understood that the broker would render them such assistance as he might without further

charge, still it clearly appears that the contract neither authorized nor required him to do anything more. Assuming, without deciding, that the description of the land was insufficient, still under the authority of *Muir v. Kane,* 55 Wash. 131, 104 Pac. 153, 19 Ann. Cas. 1180, 26 L. R. A. (N. S.) 519, and *Henneberg v. Cook,* 103 Wash. 685, 175 Pac. 313, in which the subject is fully discussed, we hold that the statute of frauds does not apply."

In the case of *Realty Mart Corp. v. Standring, supra,* a broker brought suit upon a written agreement made between two property owners for the exchange of their respective properties. The contract contained a paragraph with reference to commission identical with the one involved here, except that the amount and the manner of computing the commissions in that case were different from those provided in the contract under consideration here. While this court denied recovery in the *Standring* case, it did so solely upon the ground that the contract was not sufficiently definite as to the amount and the manner of computing the commission. In the present case, the amount of commission and the manner of payment are definitely stated.

The decisions which we have heretofore cited as authorities establishing the principles controlling in the instant case, and upon which we base our decision herein, are in line with the present weight of authority in this country. 12 C. J. S. 144, Brokers, § 62.

We therefore hold that the mere fact that the exchange contract may be legally unenforcible as between the contracting property owners does not preclude recovery upon respondents' written promise to pay for services recognized by them to have been previously performed by the appellants.

Respondents' second contention is that the amended complaint is defective and insufficient in that it fails to allege that the exchange contract was made for the benefit of appellants, or that appellants

had given any consideration therefor. Respondents cite no authority in support of this contention.

We have already dealt with the matter of consideration, holding that past services rendered by a broker are sufficient to constitute a valid consideration for a subsequent written agreement by the owner to pay the broker a specified commission.

As to the remainder of this contention, we think it is without merit. The contract, which was pleaded as a part of the amended complaint, clearly shows upon its face that the provision for the payment of commission was made for the benefit of the appellants. Moreover, as alleged in the pleading, the contract was not only signed by the respondents, the parties to be charged, but was also delivered by them directly to the appellants, the parties who had previously rendered the services for which the commission was to be paid. The situation is analogous to the execution and delivery of a promissory note by one person to another in payment, or as evidence, of an obligation owing by the one to the other.

We conclude that the amended complaint stated a cause of action. The judgment is reversed with direction to the trial court to overrule the demurrer.

SIMPSON, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.