**WALTON, Plaintiff-Appellee, v HUDSON, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1954.   Decided December 3, 1947.

Messrs. Hollencamp and Hollencamp, Dayton, for plaintiff-appellee.

Jacobson and Durst, Dayton, for defendant-appellant.

## OPINION

By THE COURT:

This is an appeal on law from the judgment of the Common Pleas Court of Montgomery County, Ohio affirming a judgment in favor of the plaintiff rendered by the Municipal Court of Dayton.

The defendant-appellant assigns as error that the judgment is not sustained by any evidence, is contrary to the manifest weight of the evidence, and is contrary to law.

The plaintiff's action was based on a breach of implied warranty of authority. The plaintiff is a real estate broker and claims damages based on a contract to find a purchaser for a residence which stood in the name of the Jonardson Company of which the defendant, Dr. John R. Hudson was Vice President. The contract was signed: The Jonardson Company, per J. R. Hudson, D. D. S. It clearly appears that at the time the contract was signed Dr. Hudson did not have authority from the Company to offer the property for sale on the terms stated in the contract. It is well established in Ohio that a person who contracts as agent, without having in fact authority to do so, is personally responsible to those, who, in ignorance of his want of authority contract with him, on the theory that he impliedly represents that he has authority to make the contract, when he has not. **Trust Company v. Floyd 47 Oh St 525; Jackson v Watkins 128 Oh St 407, 409.** In the case at bar the defendant-appellant stated that at the time he signed the contract he informed his broker, the plaintiff herein, that it would be necessary for him to secure the approval of the Corporation. The plaintiff, and his associate broker who was acting for the prospective purchaser, denied that the plaintiff made this statement at the time the contract was signed. A like contention was made in the case of Jackson v Watkins, supra, the court on commenting on that phase of the case on page 409 stated "whether he told Watkins that he had no authority to sign the agreement was a question of fact for the jury to determine. We are unable to follow the mental processes of Jackson who testified that while he signed this agreement, he had no authority to do so at the time he signed it." In the case at bar, on this issue there is a direct conflict in the testimony.

The evidence shows that the defendant signed the acceptance clause in the contract rather than the offer. Spaces were left blank in the offer clause which were afterwards filled in by the plaintiff. There is a direct conflict in the

evidence as to whether the plaintiff properly filled the blank space before the offer was signed by the purchaser.

After a consideration of all of the evidence the court can not find that the judgment of the court in resolving the issues of fact in favor of the plaintiff is contrary to the manifest weight of the evidence.

The plaintiff seeks damages by reason of the failure of the Jonardson Company to complete a sale of the residence property which by the terms of the contract was offered for sale for Twenty Thousand Dollars cash. The plaintiff secured a purchaser who signed the agreement to purchase said property on the terms stipulated. The sale was not consummated. Dr. Hudson claims that at the time he signed the offer he made the verbal statement that his offer must be accepted within five days. The plaintiff and his associate both deny that a time limitation was placed upon the acceptance of the offer. The contract was dated December 15, 1939. On- or about December 22, 1939 the plaintiff informed the defendant that he had secured a purchaser. The defendant stated that the deal could not be consummated before he left for the south where he expected to sojourn for several weeks. The plaintiff informed the defendant that the closing date of the transaction was January 20, 1940. The record does not disclose that the plaintiff and defendant came to any definite conclusion respecting the transaction on that date. Within a day or two the defendant left the city and returned on or about January 12, 1940. Within a few days thereafter the plaintiff presented the signed contract to the defendant who at that time stated that the deal could not be consummated as he had no authority from the Corporation to offer the property for sale at that price.

Before the plaintiff can recover damages for breach of implied warranty of authority plaintiff must prove that he obtained a purchaser who was ready, willing and able to purchase the property on the terms stipulated. 6 O. Jur. 216; Pfanz v Humburg 82 Oh.St 1; Spengler v Sonnenberg 88 Oh St 192, 199. The evidence shows that immediately after the purchaser, Mrs. Meta Fisher, signed the contract an application was made for a loan at the Third National Bank and Trust Company, Dayton, Ohio. The loan was granted and the Bank proposed to make the loan on a piece of property then owned by Mrs. Fisher and the property involved in the sale. The evidence further shows that Mrs. Fisher was the owner of the property in which she resided and which she expected to dispose of. The loan officer of the Bank, Mr. Rupert, testified that the loan had been granted and that the Bank was

prepared to close the deal on January 20, 1940. The plaintiff contends that a Twenty Thousand Dollar bank check was tendered to the defendant which he refused. The defendant denies that a tender was made. Mr. Rupert testified that no check had been issued 'and no tender had been made. We regard this matter as immaterial as under the circumstances plaintiff was not required to make a tender.

Do the facts presented show that the plaintiff had produced a purchaser who was ready, willing and able to buy on the terms stipulated? The readiness and willingness of Mrs. Fisher may reasonably be inferred from the fact that she applied to the Bank for a loan in order to consummate the deal. Do the facts show that she was able to buy? The ability to buy refers to the financial ability of the purchaser. The general rule is well established; however, in this State we find few authorities which determine the degree of proof required to establish financial ability of the purchaser. The most recent authority is **C. O. Frick Company v Baetzel 71 Oh Ap 301** in which it was held that: "a prospective buyer meets the legal standard of ready, willing and able to buy, although he does not have the cash in hand, if he is able to command the necessary funds to complete the purchase within the time allowed by the offer." A number of authorities are cited in the Opinion from which we quote at length:

"There are cases which hold that a proposed purchaser can be shown to be "ready, willing and able" to buy only by proof that "he, at the time he was presented as a purchaser of the property, had then under his control for immediate payment the amount of the purchase money in cash." . Chitwood v White, 18 Ala. App. 331, 92 S., 84; Reynor v Mackrill, 181 Iowa, 210, 164 N. W., 335.

Other cases hold, and we think correctly that all that need be shown to meet the required degree of proof is that "he need not have all the money in his immediate possession or to his credit at a bank, if he is able to command the necessary funds to close the deal within the time required." Laack v Dimmick, 95 Cal. App. 456, 273, P., 50. Although the proposed purchaser "may not have in hand all the necessary cash, the ability to command the necessary funds to close the deal" must be shown to exist at the time the offer is made. Ramsdell v Krehmke, 95 Cal. App., 195, 272 P., 333; McCabe v Jones, 141 Wis., 540, 124 N. W. 486; Hays v Goodman-Leonard Realty Company., 146 Miss. 766, 111 S., 869.

On the other hand, the cases uniformly hold that "a proposed purchaser cannot be said to be able to purchase when he is dependent upon third parties who are in no way bound to furnish the funds to make such purchase." Pellaton v Brunski, 69 Cal. App., 301, 231, P., 583. See, also, McCune v Badger, 126 Wis., 186, 105 N. W., 667; O'Brien v Gilliland & Armstrong, Exrs., 4 Tex. Civ. App., 40, 23 S. W., 244; Massie v Firmstone, 134 Va., 450, 114 S. E., 652; and note to 1 A. L. R. 528."

In 12 C. J. S. page 193, it is stated: "Aside from immediate cash payments, the ability of a purchaser is not to be judged exclusively with reference to money in his possession or to his credit in a bank; consideration should also be given to his assets, credit, financial rating, enforceable agreements for loans, and anything else indicating ability or lack of ability on his part to command the requisite funds at the required time." In Mechem on Agency Vol. 2 Second edition, page 2031, it is stated: "What constitutes financial readiness or ability in these cases cannot be determined by any hard or fast rule. It is, obviously, a very different question from that of solvency. Much must depend on the terms prescribed in each case, and a man must be deemed pecuniarily able and ready when he had made the preparation and arrangements which are in accordance with safe and conservative dealing." A lengthy annotation dealing with this proposition is found in 1 A. L. R. 528. The authorities are not in agreement as to the degree of proof required to show financial ability to pay. As was stated in C. O. Frick Company v Baetzel, supra, some authorities require the purchaser to have in his possession the funds necessary to close the deal at the time the contract is entered into. However, we believe that an investigation of the authorities cited in works referred to show that this rule has been relaxed to the extent that all that is required is that the purchaser be able to command the necessary funds to close the deal on the date agreed upon.

The case of McCabe v Jones, 141 Wis., 540, is frequently referred to as supporting the more liberal rule. In that case the court held:

"To entitle a real estate broker to recover his commission on a sale which his principal refused to carry out he need show only that he procured a purchaser who was ready, willing and pecuniarily able, within the time fixed, to take and pay for the property."

"Pecuniarily able in such connection means merely able to command the necessary money to close the deal on reasonable notice or within the time limited by the vendor."

In Rosenblatt v Bergen, 202 App. Div. 220, (N. Y.), on page 222 the court held: "All that is necessary is that they shall have the money necessary to make the payment required when the contract is signed and have sufficient available assets, and have made arrangements to realize on those assets so as to complete on the closing.

See, also, Casey v Hotel Company, 150 N. E. 162, (Mass.); Prugh v Tyrrell 208, Mo. App. 582, 235, S. W. 143.

The evidence in this case shows that the purchaser had sufficient assets, had secured a loan, had made all necessary arrangements to realize on those assets, and have the money in hand to consummate the deal on January 20, 1940. We are of the opinion that under the facts in this case the plaintiff produced a purchaser, who was ready, willing and able to buy on the terms agreed upon and was financially able to close the deal on the date stipulated.

Since the plaintiff-appellee has not filed a cross-appeal, we can not consider the question as to whether the evidence would have warranted a judgment in a greater amount.

On the factual issues in this case, we cannot say that the judgment of the trial court was against the manifest weight of the evidence, neither was it contrary to law. Judgment affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.