[No. 35875.   Department One.   August 2, 1962.]

LLOYD K. HARDING, *Respondent*, v. CECIL ROCK *et al.*, *Appellants.**

*Reported in 373 P. (2d) 784.

*Thomas B. Gess,* for appellants.

*Cornelius & Cornelius,* for respondent.

FINLEY, C. J.—This is a lawsuit commenced by Lloyd K. Harding, doing business as Harding Farm Agency, specializing in transactions relating to farm properties, to recover $2,500, allegedly due as a real-estate broker's commission. The trial court granted judgment as prayed for by the plaintiff; thereupon, the defendants appealed.

The appellants operate a family farm-business type enterprise, owning lands in Benton and Klickitat Counties. Desiring to sell a portion of their holdings in order to pay debts and operating expenses, appellants engaged the respondent as an agent to sell certain designated property for them. An exclusive listing agreement was entered into on September 6, 1958. The agreement provided as follows:

"In consideration of your listing for sale . . . [certain property] I hereby appoint you my agent until and including September 26, 1958 to find a purchaser ready, able and willing to buy said property at the price and on the terms set forth on the reverse side hereof, or any other prices or terms which I may approve.

" . . .

"In case of a sale exchange, or conveyance of said property in whole or in part during the life of this listing by you, myself, or anyone else I agree to pay you in cash, when the escrow is closed (or on date of escrow in case of faulty title), or upon the closing by you, the regular 5% commission, or if you negotiate with or place me in touch with a buyer to or through whom, within 190 days after the expiration hereof, I may sell said property, I agree to pay you the regular commission herein above provided.

" . . .

"This listing grants unto you the sole and exclusive right of sale (not excepting myself) and right to execute in my name 'Agreement to Purchase' upon receipt from purchaser of a reasonable deposit."

On September 28, 1958, respondent arranged a transaction with Albert Geib and his son, Gary W. Geib, prospective purchasers with whom he had been negotiating during September. Geib placed his signature on a document labeled, *Agreement to Purchase,* and, sometime later, appellants likewise signed the agreement. The essential elements of the contract appear below. It was on a printed

form used by respondent, with blanks filled in by him in longhand. The longhand portions appear in italics, as follows:

### "AGREEMENT TO PURCHASE

"THIS AGREEMENT made at Spokane, Washington, this *28th* day of *September,* 1958 between *Albert Geib & Gary W. Geib (father and son),* herein called Purchaser and the principal for whom *Harding Farm Agency,* broker, is acting as agent, herein called the Seller,

"WITNESSETH:

"That the purchaser hereby agrees to purchase from the seller the following described property situated in the County of *Benton,* State of Washington, to-wit: . . . [*legal property description*] free from encumbrance except, taxes for the present year which are to be pro-rated and: *Closing & possession date—15 days after final approval A.S.C. Contract to purchaser's.*

" . . .

"The terms and conditions of this purchase are as follows: The total purchase price is the sum of *$45,000.00* which the purchaser agrees to pay to the seller in the following manner: The sum of *$1,000.00 Check* earnest money this day paid to said broker.

"*Purchasers agree to pay $45,000.00 cash. All cash upon closing date. This purchase is expressly contingent upon purchaser being able to obtain U. S. Dept. of Agriculture Conservation Reserve Soil Bank Contract accepted by Agriculture Stabilization Committee for total minimum payment of $4500.00 per year on ten year contract. If not approved purchaser to be fully released from this agreement. Purchase price includes all mineral rights, oil rights, and leases which are to be assigned to purchaser as of date of closing. All earnest money to be refunded to purchaser if soil bank contract not obtained.*

" . . .

"This agreement does not bind the seller unless accepted at or before 12 noon on the *30th* day of *September,* 1958. It is binding upon the purchaser from this date and may not be cancelled or earnest money withdrawn unless the seller fails to accept it in said time. . . .

" . . .

"*Harding Farm Agency,* Agent for Seller
"By *Lloyd K. Harding* [signed]
"*Albert Geib* [signed]

"Purchaser

"I hereby approve and accept the sale set forth in the above agreement and agree to carry out all the terms thereof on the part of the seller. I agree to discharge forthwith any unpaid balance on any fixtures, apparatus or similar items enumerated in said agreement as constituting a part of said premises. I agree to pay forthwith to *Harding Farm Agency* as a broker a commission of $ (5%), and upon the closing or specific enforcement of this transaction said broker may apply on such commission the earnest and/or purchase money paid to the extent of such commission. In the event of a forfeiture I agree that all forfeited payments shall be paid first to the broker to the amount of his regular commission and the balance if any to the seller as liquidated damages.

"Dated this *28th* day of *September, 1958.*

"*Cecil Rock* [signed] Seller

"*Cecil W. Rock* [signed] Seller

"*Percy H. Rock* [signed]"

The prospective purchasers, Albert Geib and son, applied at Goldendale, in Klickitat County, for a U. S. Department of Agriculture Conservation Reserve Soil Bank Contract. It does not appear what was done with the application except that a form letter was received by Mr. Geib notifying him that the application was on file. Apparently, no one obtained any definite information as to the progress of the application, and the matter continued *without conclusive result* to the end of 1958.

In the latter part of December 1958, appellants sold the property to a third person without the assistance and without the knowledge of respondent. The selling price was substantially the same as that to have been paid by Geib. The $1,000 earnest money was returned to Geib by the appellants.

The respondent proceeded on alternative theories in the trial court. It was contended, first, that the purchase agreement constituted an unconditional agreement to pay for broker's services already rendered; and, second, completion of the sale, in any event, was defeated by the action of the appellants in disposing of the property.

The appellants' defense was based upon these conten-

tions: First, the commission agreement was conditioned upon consummation of the sale; and second, the purchase agreement contained a condition precedent which was not and could not be performed; hence, the purchaser's promise was illusory, and the contract failed for lack of consideration.

Testimony during the trial indicated that Geib, although always able and apparently wanting to consummate the purchase, steadfastly refused to waive the condition, and stated that he would not buy the property unless he obtained the soil bank contracts. At the time appellants signed the purchase agreement, they believed that the arrangements for payment of the broker's commission were controlled by the listing agreement, and that thereunder they had no duty to pay the respondent a commission unless sale actually was consummated and closed as prescribed in the listing agreement.

The trial court held that the agreement to pay the broker's commission was contingent on the closing of the transaction, but that appellants' acceptance of the contingent features of the purchase agreement, coupled with their knowledge that negotiations, looking toward a possible fulfillment of the conditions, had been commenced and not finally culminated, placed upon them the burden of notifying the respondent of their proposed abandonment of the contract in order to afford the respondent an opportunity to expedite and to finalize the matter of the soil bank contract one way or the other.

Appellants' assignments of error may be reduced to a single proposition: that the trial court erred by allowing respondent to recover the commission without a showing that the condition in the contract would have been met, and that the sale would have been consummated had the appellants not sold the property to someone else.

Respondent contends that the judgment can be sustained either on the ground indicated by the trial court or on the alternative ground advocated by him and rejected by the trial court; i.e., that appellants made an unqualified agreement to pay a commission forthwith without regard to the

eventual consummation of the contract between the buyer and seller. For convenience in presentation, the second aspect of respondent's contention will be examined first.[1]

It is clear that the *listing* agreement provided for the payment by appellants of a five per cent broker's commission to the respondent, payable at the closing of a sale. The *purchase* agreement, however, contained a different provision which stated, "I agree to pay forthwith to Harding Farm Agency as broker a commission of $ 5% . . ." Respondent contends that the latter phrase has the effect of constituting an immediate duty on the part of the appellants to compensate the respondent for services already performed, and that any language in the listing agreement relating to appellants' duty to pay a commission is ineffectual. Proper analysis of the problem thus presented requires an examination of the documents and events in terms of basic principles respecting the formation of legally binding contracts.

The listing agreement was just that—a listing agreement. Respondent agreed to list certain property for sale, and appellants in return agreed to appoint the respondent as exclusive agent for a limited period of time to find a purchaser ready, able and willing to buy according to specified terms and price. There was no contract relating to payment of a commission within this document. The language relating to payment of a commission was in terms of offer.[2] Two offers were made, each in contemplation of

[1]In view of the disposition of this case, this contention is fairly before the court since the judgment of the trial court could be sustained if it were determined that error was committed in the determination of this issue. Furthermore, the issue is inextricably involved with other aspects of the case.

[2]We are using the term offer throughout this opinion in accordance with the definition appearing in Restatement, Contracts § 24 (1932), where it is stated: "An offer is a promise which is in its terms conditional upon an act, forbearance or return promise being given in exchange for the promise or its performance." The fact that the word "agree" was used in the document instead of the word "promise" does not prevent the language from being an offer. According to the Restatement, § 2, a promise is "an undertaking, however expressed, that something shall happen, or that something shall not happen, in the future."

a unilateral contract. Appellants promised to pay in cash, upon closing, a five per cent commission in case of a sale, exchange or conveyance of the property during the life of the listing agreement. They also promised to pay the commission with the same qualifications if, within one hundred ninety days after expiration of the listing, appellants sold the property to a purchaser secured as a result of respondent's efforts or negotiations. Respondent did not promise either to find a buyer for the property or to make diligent efforts to find a buyer. Indeed, respondent could not accept either offer, except by producing a purchaser with whom appellants accomplished a sale of the property according to the conditions of the offer. The contract could become executed only when respondent fully performed the required acts, a sale accomplished, and the transaction closed. See, generally, 1 Corbin, Contracts § 50 (1950).

The prospective buyer did not place his signature on the agreement to purchase until September 28, 1958, *two days after* the exclusive listing agreement expired. Respondent was, therefore, no longer authorized to act as agent to execute an agreement to purchase in the name of the seller, and one of appellants' offers was terminated. However, by virtue of the carry-over or extension provision of the listing agreement, respondent could still perform the necessary acts which would constitute acceptance of the other offer.

The *Agreement to Purchase,* it must be recognized, is *primarily* a document pertaining to the legal relations between the purchaser and the seller. The seller's signature was necessary to validate the transaction negotiated by the respondent, because, first, respondent's authority to act as agent had expired; and second, the purchase agreement by its terms was not binding on the seller until and unless it was accepted by the seller within a specified period of time. Acceptance by the sellers produced a contract between them and the purchasers. *White & Bollard, Inc. v. Goodenow* (1961), 58 Wn. (2d) 180, 361 P. (2d) 571. Our primary concern here, however, is what effect did the purchase agreement have on the legal relations between the seller and the respondent as broker.

■■ The preferable analysis would seem to be this: Acceptance of the purchaser obtained by the respondent amounted to an acceptance of part of the performance required of the respondent to accept the offer of the sellers. The sellers could not thereafter revoke their offer, and they were bound to pay the respondent his commission, subject only to the condition that full consideration be forthcoming; *i. e.,* completion of the transaction and closing of the sale. Restatement, Contracts § 45 (1933). The phrase, "I agree to pay forthwith to Harding Farm Agency as a broker a commission of $ 5% . . . ," and related language, cannot be considered an incurrence of an obligation under a different contract with the respondent, because there is no offer emanating from the respondent. Respondent's activities were in the nature of partial performance directed toward completion of the requirements to constitute acceptance of appellants' unilateral offer. The respondent could have, of course, clearly indicated that his activities were meant as offer rather than acceptance; but he did not do this. Respondent is, therefore, bound by appellants' understanding of his manifestations, which, according to the testimony, was that he was acting in accordance with commission arrangements contemplated by the listing agreement document. See Restatement, Contracts § 71, Comment a.

The respondent relies primarily on the case of *Richey v. Bolton* (1943), 18 Wn. (2d) 522, 140 P. (2d) 253, for the proposition that appellant, by signing the purchase agreement, assented to payment of the broker's commission for services rendered. It is significant that the provisions in the purchase agreement here have no reference to payment "for services," "for services rendered," or "for services already performed." The seller in the *Richey* case agreed to pay a broker's commission "for negotiating this transaction at or before the consummation of contract." The contract also provided that, in the event a certain contingency was not met, "this agreement except the provisions concerning commissions shall be void. . . ." Thus, in the *Richey* case, it was held that the promise of the seller was to pay for services already performed, and

that eventual consummation of the transaction was irrelevant. The *Richey* case is not controlling, because the added language appearing in the contract relating to broker's commissions in that case dictated an entirely different analysis. The problem presented to the court was one of contract interpretation rather than of contract formation. The same distinction can be made with even greater force respecting the cases of *Largent v. Ritchey* (1951), 38 Wn. (2d) 856, 233 P. (2d) 1019; *Ellingsen v. Landre* (1952), 40 Wn. (2d) 116; 241 P. (2d) 207; and *Spencer v. Houtt* (1947), 29 Wn. (2d) 252, 186 P. (2d) 613, which are relied on by respondent for the same proposition.

Accordingly, we hold that the duty of appellants to pay a broker's commission was conditional upon the consummation of the transaction or closing of the sale, and that appellants did not assent to pay respondent for services rendered. The trial court's ruling as to this phase of the case was correct.

Appellant argues that the condition precedent to the purchaser's duty to pay could never be met; therefore, the duty to pay a broker's commission, which was conditioned upon a consummated sale, could never arise. Reliance is placed on Regulations adopted by the Secretary of Agriculture (21 Federal Register 6289, part 485, Soil Bank), the contention being that under these regulations the purchaser could never obtain the desired contracts. These regulations were presented to the trial court. The respondent did not introduce any evidence as to whether or not the condition could be met. The trial court held that the appellants failed to establish their contention that the contingency in issue was incapable of being met, because the interpretation and general applications of the criteria reflected in the rules cited by appellant were not cited to the court.

We agree with the trial court that the circumstances were such that the appellant was not justified in abandoning the purchase agreement without at least notifying the respondent and affording the respondent an opportunity to consummate negotiations one way or the other. *Cf. Duncan*

*v. Parker* (1914), 81 Wash. 340, 142 Pac. 657. We are in agreement also with the trial court's finding that the evidence is inconclusive as to whether or not the condition in the purchase agreement could ever be met; consequently, appellants' contention in this regard is unavailing. The trial court concluded that the sale of the property to a third party amounted to a repudiation of the purchase agreement and a breach of that contract. This was a correct application of the law. *Parchen v. Rowley* (1938), 196 Wash. 340, 82 P. (2d) 857. See, also, Restatement, Contracts § 318(b) (1933); 5 Williston, Contracts § 1325 (Rev. ed. 1936). The trial court then concluded that the breach of the purchase agreement made it impossible for respondent to earn his commission and, therefore, adjudged that appellant was obligated to pay the commission.

While we agree that appellants' conduct amounted to a breach and that it prevented any possibility for consummation of the purchase agreement, we do not think it follows that respondent is entitled to the full commission unless it is proved that the condition would have been met. Under the trial court's decision, the appellant would be held liable for a commission that conceivably might not have been earned. This would be contrary to the position taken by this court in *White & Bollard, Inc. v. Goodenow* (1961), 58 Wn. (2d) 180, 361 P. (2d) 571. In fairness to the trial judge, we should note that the trial of the instant case occurred before the *White & Bollard* case was decided.

Actually, appellants' conduct amounted to a breach of a duty not to revoke the offer in contemplation of a unilateral contract after partial performance of the acts necessary to constitute acceptance by the broker. Breach of this duty did not, under the evidence before us, deprive the broker of his commission. Rather it deprived him of a possibility of earning a commission. The following analysis will, we think, lead to the proper solution of the problem thus presented. Appellants' breach caused some damage to the respondent, although it is uncertain how much. Respondent must show that the condition would have been met, and the transaction consummated, except

for the fact that appellant sold the property to a third party, before the full commission can be recovered. If the condition could never have been met, the broker would never have been entitled to any commission, and the breach caused the broker nominal damage only. If the situation has become such that it is impossible to prove either way what the ultimate conclusion of the government agency's action would have been, we think that the rule appearing in Restatement, Contracts § 332 (1933), is applicable. The respondent can recover the estimated value of his conditional right to a commission at the time of the breach. The amount of recovery will be measured according to the likelihood of the transaction ever being consummated and closed. The appellants' contention that the trial court erred in allowing judgment even though respondent did not show that the condition would have been met had appellants not sold the property to someone else is substantially correct. The cause must, therefore, be remanded for further proceedings. Allocation of costs will abide the final result. It is so ordered.

HILL and FOSTER, JJ., concur.

WEAVER and ROSELLINI, JJ., concur in the result.