[No. 3005-1. Division One. July 19, 1976.]

RECORD REALTY, INC., ET AL, *Respondents*, v. CLAIR HULL, ET AL, *Appellants*.

*D. Scott Sandelin*, for appellants.

*Franco, Asia, Bensussen & Coe, Harold B. Coe,* and *Laurence B. Finegold,* for respondents.

CALLOW, J.—The plaintiffs brought this action to recover a real estate broker's commission claimed due on an exclusive multiple listing contract which stated that the plaintiffs were to receive a commission if they provided the defendants with a "ready, able and willing" buyer. The trial court entered judgment for the plaintiffs and the defendants appeal.

Findings of fact as entered by the trial court stated in pertinent part:

3. On the 5th day of October, 1971 defendants, husband and wife, executed an exclusive multiple listing contract with GENESEE, INC. for the sale of real property in the sum of $28,500. allowing terms of either F.H.A., V.A., CONVENTIONAL or ASSUMPTION OF MORTGAGE. The agreement was to expire February 5, 1972. The exclusive multiple listing contract required the plaintiff GENESEE INC. to use its best efforts to find a purchaser and seller granted GENESEE, INC. the sole and exclusive right to sell said property and agreed to pay a commission of 7%, the cost of employment of an attorney to enforce any of the terms of the agreement if a ready, able and willing purchaser was made available. (Exhibit 1).

Thereafter, Plaintiff GENESEE, INC. commenced advertising defendant's property by newspaper, placing a sign upon the premises, received inquiries and showed the property to prospective purchasers.

4. On or about the 21st day of December, 1971 plaintiff corporations presented to defendants an Earnest Money Receipt and Agreement from a ready, able and willing purchaser which in all respects complied with the terms and conditions of the multiple listing contract. (Earnest Money—Exhibit 3.)

5. Upon presentation by the plaintiffs to the defendant, of the Earnest Money Receipt and Agreement, (Exhibit 3), defendants refused to sell said property; defendant husband stating that he had decided not to sell the property regardless of any offer presented.

6. Plaintiffs having done all that was required of them have earned their commission.

The cause is before us on a short record. CAROA 34(4). The statement of facts contains only the testimony of a sales person for the plaintiff, one Sharen Carrell, while the judgment entered by the trial court reflects that three other persons also testified. The plaintiff broker did not propose any amendments to the statement of facts. Therefore, it is deemed to have been agreed to. CAROA 36. The trial court certified that

> the matters and proceedings embodied in the foregoing statement of facts are matters and proceedings occurring in said cause and that the same are hereby made a part of the record therein, and all exhibits will be attached.
>
> I do further certify that the same contains all the material facts, matters and proceedings heretofore occurring in said cause and *not already a part of the record therein.*

The defendant, to bring the matter before us on a short record, filed a concise statement of points on appeal. CAROA 34(4). Only one of the points on appeal recited is now urged. It reads as follows:

> The trial Court erred in entering judgment for plaintiffs because two conditions precedent had not been proved:
> 1. That the buyer [Burback] was *able* to purchase the property . . .

In a letter dated June 1, 1973, an exhibit admitted as part of the record, plaintiff's counsel wrote to the plaintiff stating in part:

> Our key witness, Tom Burback, is no longer in the area. . . .
> The law requires us to prove that the Broker had a buyer who was ready, willing and *able* to make the purchase. Without Burbacks testimony the ability remains in question.

A broker is entitled to his commission if he provides the seller with a buyer who is "ready, willing, and able" to purchase the property. *Burt v. Heikkala,* 44 Wn.2d 52, 265 P.2d 280 (1954); *Johnston v. Smith,* 43 Wn.2d 603, 262 P.2d 530 (1953); *Spencer v. Houtt,* 29 Wn.2d 252, 186 P.2d 613 (1947); *Haynes v. John Davis & Co.,* 22 Wn.2d

474, 156 P.2d 659 (1945); *Best v. Kelley*, 22 Wn.2d 257, 155 P.2d 794, 156 A.L.R. 1387 (1945); *Bloom v. Christensen*, 18 Wn.2d 137, 138 P.2d 655 (1943); 12 Am. Jur. 2d *Brokers* § 183 (1964). The term "able" buyer refers to a purchaser who is financially able to command the necessary funds to complete the purchase within the time allowed by the offer. As stated in 12 C.J.S. *Brokers* § 85b, at 193 (1938):

> [O]rdinarily the word "able," as used in connection with a purchaser . . . , refers to his financial ability. Furthermore, the financial ability required of a customer, to entitle the broker producing him to a commission, is his ability to meet the terms of the sale . . .
>
> . . .
>
> Aside from immediate cash payments, the ability of a purchaser is not to be judged exclusively with reference to money in his possession or to his credit in a bank; consideration should also be given to his assets, credit, financial rating, enforceable agreements for loans, and anything else indicating ability or lack of ability on his part to command the requisite funds at the required time.

(Footnotes omitted.) *See Potter v. Ridge Realty Corp.*, 28 Conn. Supp. 304, 259 A.2d 758 (Super. Ct. 1969); *Chanton v. Drucker*, 299 So. 2d 145 (Fla. Dist. Ct. App. 1974); *William C. Bender & Co. v. Tritz*, 338 Ill. App. 661, 88 N.E.2d 519 (1949); *Campbell v. Fowler*, 214 Kan. 491, 520 P.2d 1285 (1974); *Winkelman v. Allen*, 214 Kan. 22, 519 P.2d 1377 (1974); *Shell Oil Co. v. Kapler*, 235 Minn. 292, 50 N.W.2d 707 (1951); *Walton v. Hudson*, 82 Ohio App. 330, 79 N.E.2d 921 (1947); *Peter M. Chalik & Associates v. Hermes*, 56 Wis. 2d 151, 201 N.W.2d 514 (1972); Annot., 1 A.L.R. 528 (1919); 12 Am. Jur. 2d *Brokers* § 184 (1964). As observed in *Shell Oil Co. v. Kapler, supra* at 298:

> Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets—which in part may consist of the property to be purchased—and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money—or as much thereof as he is unable to supply

personally—by obtaining a *binding commitment* for a loan to him for that purpose *by a financially able third party*, irrespective of whether such loan be secured in part by the property to be purchased.

(Footnotes omitted.)

 A broker who sues for his commission has the burden of proving that he has fulfilled all conditions precedent to the duty of the seller to pay, including the condition that he has produced an "able" buyer. *Brown v. Grimm*, 258 Ore. 55, 481 P.2d 63 (1971); *Henry Broderick, Inc. v. Baker*, 151 Wash. 1, 274 P. 722 (1929). The broker submits that the record establishes "sufficient evidence of the buyer's financial position." We do not agree. The evidence presented showed that the prospective buyer was newly employed as a used car salesman, having recently moved into the area from another city. There was no showing of the assets or income of the prospective buyer, no credit report was secured, and no loan application was submitted. An exhibit was admitted which reflects that the prospective purchaser apparently purchased another house after the transaction in question fell through. However, that exhibit does not contain any evidence of the purchase price of the second house or substantiate in any way that the prospective purchaser was able to finance the purchase of a home within the price range of the seller's house. *Peter M. Chalik & Associates v. Hermes, supra*.[1]

The plaintiff brokers contend, however, that when, as in this case, the seller repudiates the exclusive listing agreement by stating he has decided not to sell the property regardless of the offer presented, the seller is estopped from defending an action on the ground that this condition has not been satisfied. We disagree. To recover, the broker must show that he did perform or could have performed had the contract not been repudiated. Were it not so, a broker could

---

[1] "Plaintiff [broker], at trial, attempted to introduce into evidence the fact that, at some point subsequent to the dealings with defendant, [prospective buyer] did, in fact, purchase another piece of property for $70,000. The trial court properly excluded the evidence on the grounds of irrelevancy." *Peter M. Chalik & Associates v. Hermes, supra* at 162.

recover for full performance when no performance whatsoever had been given. The broker must show that the condition could have occurred had its performance not been prevented by the seller. Restatement of Contracts § 295 (1932). *See Abbott v. Floyd*, 136 Cal. App. 365, 28 P.2d 929 (1934); 12 Am. Jur. 2d *Brokers* § 200 (1964). The applicable rule is stated in 3A A. Corbin, *Corbin on Contracts* § 768, at 546-47 (1951):

> A very commonly recurring illustration of prevention of the fulfilment of a condition precedent to the duty of a promisor to pay money is to be found in the law of agency, such prevention being sometimes privileged and sometimes not. A land owner lists his property with a broker for sale, promising to pay a commission for the service of producing a purchaser able and willing to buy on terms satisfactory to the owner. The production of such a purchaser and an expression of mutual agreement between him and the owner are express conditions precedent to the owner's duty to pay the commission. If the owner, contrary to his understanding with the broker, prevents the fulfilment of these conditions by wrongfully refusing to convey after having agreed on terms, an action can be maintained by the broker without such fulfilment. His judgment will be for the full amount of the promised commission, less any expense that he has saved by reason of the owner's breach, *if he can show that but for the owner's action he could and would have fulfilled the conditions.*

(Footnote omitted. Italics ours.) *See Harding v. Rock*, 60 Wn.2d 292, 373 P.2d 784 (1963); *White & Bollard, Inc. v. Goodenow*, 58 Wn.2d 180, 361 P.2d 571 (1961); *Quadrant Corp. v. Spake*, 8 Wn. App. 162, 504 P.2d 1162 (1973).

It is suggested that the seller must show that the ground for rejection of an offer tendered to the seller by the broker was specified to the broker at that time. We recognize that it is the rule in the majority of jurisdictions that a landowner who has entered into an agreement to pay a commission to a broker who secures a "ready, able, and willing" buyer cannot then defend an action by the broker for his commission on a ground that was not specified by the landowner if he rejected the offer. *Julian James Stores, Inc. v.*

*Bennett*, 250 Ark. 279, 465 S.W.2d 94 (1971); Annot., 156 A.L.R. 602 (1945); 12 Am. Jur. 2d *Brokers* §§ 167, 200 (1964). *See also Harding v. Rock, supra; McGinnis v. Forest Lumber Co.*, 123 Wash. 136, 212 P. 166 (1923); *Utterback v. Johnson*, 110 Wash. 57, 187 P. 369 (1920).

However, this rule does not excuse the broker from proving performance of the *material* conditions of the agreement. In *Kleven v. Cities Serv. Oil Co.*, 22 Wis. 2d 437, 444, 126 N.W.2d 64, 68 (1964), we find the basis for the rule that a seller does not waive proof of performance of a material condition of the agreement discussed as follows:

> The reason for holding the owner liable for the broker's commission, where he refuses an offer to purchase submitted by the broker which contains a variance from the listing contract that is not substantial without mentioning this variance as a ground for the refusal, is that fair dealing on the owner's part requires that he point out such variance so that the broker may be afforded an opportunity of correcting it. However, where the variance is a substantial one, such as one that is directly in conflict with a material provision of the listing contract, there has been no substantial performance by the broker which would entitle him to his commission, absent acceptance of the offer by the owner. The broker is chargeable with knowledge that such substantial variance exists when he submits the offer, and, therefore, the owner should be under no duty to point this variance out to the broker in rejecting the offer.

The reasoning of the *Kleven* case was adopted in *Peter M. Chalik & Associates v. Hermes, supra*, which noted that a seller cannot be said to have waived the financial inability of the buyer as a defense simply because he rejects the offer. This issue is presented by the circumstances of the case before us. After quoting from the paragraph in the *Kleven* case we have set forth, the court in the *Chalik* case looked upon the financial ability of the prospective buyer as a substantial condition and stated:

> [W]e conclude that a seller does not waive the financial inability of the buyer as a defense when he gives no reason for rejecting the offer.

*Peter M. Chalik & Associates v. Hermes* 56 Wis. 2d 151, 163, 201 N.W.2d 514, 521 (1972). We hold that it was obligatory for the broker to prove performance of the conditions precedent to the duty of the seller to pay a commission, to wit, to prove production of a "ready, able, and willing" buyer.[2]

The contract entered into between the broker and seller stated in part:

> [T]he undersigned owners of said property, do hereby give and grant you the sole and exclusive right, . . . to sell or exchange said property, . . . for the period of four months from the date hereof, . . .
>
> . . .
>
> During the life of this contract if you find a buyer who is ready, able and willing to buy said property at said price and terms, . . . I agree to pay you a commission of 7 [percent] of the sale price, . . .

The plaintiff broker is not entitled to a commission under this contract unless there is evidence to support the finding that an *able* buyer had been secured, or could and would have been secured. This is so whether the contract is interpreted as a unilateral or bilateral contract and whether, if it is interpreted as a bilateral contract, the seller has breached the contract. The record does not contain evidence of either performance or that the broker could and would have performed. *Harding v. Rock, supra; White & Bollard, Inc. v. Goodenow, supra; Quadrant Corp. v. Spake, supra. See also* 5 S. Williston, *A Treatise on the Law of Contracts* §§ 677, 678, 699 (3d ed. 1961); 4 A. Corbin, *Corbin on Contracts* § 978 (1951).

The judgment of the trial court is reversed. We find no legal basis upon which to award other than statutory attorney's fees to the appellants. They shall recover their costs.

WILLIAMS, C.J., and JAMES, J., concur.

---

[2]This appeal brought before us an issue other than that discussed in *McMenamin v. Bishop*, 6 Wn. App. 455, 493 P.2d 1016 (1972).