0038

Ben C. CHAMPION, d/b/a Champion Realty Company, Appellant, v. Jack D. WHALEY and Robert H. Edwards, Respondents.

(311 S. E. (2d) 404)

Court of Appeals

*Richard E. Richards*, of *Richards & Wright*, Lancaster, *for appellant.*

*Francis L. Bell, Jr.*, of *Yarborough, Bell & Tindal*, Lancaster, *for respondents.*

Jan. 9, 1984.

BELL, Judge:

This is an action for damages for breach of contract. Champion, a realtor, alleges he is due a commission from Whaley and Edwards under an exclusive agency contract for the sale of a house. The matter came on for trial before a jury, but at the close of Champion's evidence the judge granted the defendants' motion for a nonsuit. Champion appeals. As the evidence raised material issues of fact for determination by the jury, we reverse and remand for a new trial.

On a motion for an involuntary nonsuit the evidence must be viewed in the light most favorable to the plaintiff and if more than one reasonable inference can be drawn therefrom, the judge must submit the case to the jury. *Associate Management v. E. D. Sauls Construction Co.*, S. C., 305 S. E. (2d) 236 (S. C. 1983); *Duke v. Westvaco Development Corp.*, 309 S. E. (2d) 293 (S. C. App. 1983).

Viewed in the light most favorable to Champion, the evidence disclosed the following material facts. Whaley and Edwards (the Sellers) own a house in Lancaster. In August, 1979, they signed an exclusive agency contract with Champion agreeing to pay a commission of six per cent if Champion sold the house. On December 7, 1979, within the period of the exclusive agency, Champion, with the assistance of another broker, Pat Michelson of Century 21, obtained a buyer for the property, one Joyce Bell. Bell and the Sellers executed a written contract of sale that called for closing within 120 days, i.e., by April 6, 1980. The contract was conditioned on Bell's obtaining a 100% loan from Farmers Home Administration (FmHA). The same day, Champion and the Sellers executed an agreement extending the period of the exclusive agency to April 27, 1980. Shortly after the sales contract was signed, Bell applied to FmHA for the loan.

On March 12, 1980, Whaley informed Jim Champion, one of the plaintiff's brokers, that the Sellers had sold the house to Ross Cauthen and that "he'd closed the home out." Champion objected, insisting the Sellers were obligated to honor their contract with Bell. On or about March 19, 1980, Bernard Tucker, the head broker at Century 21, and Arthur Bragg, the administrator of the local FmHA office, went to the house to

appraise it for the purpose of finalizing Bell's loan. Tucker's key would not admit them because the locks had been changed. While trying to gain entrance they were approached by Ross Cauthen, who was working in the back yard. Cauthen told them he had bought the house from the Sellers. Cauthen had changed the locks on the house and would not give Tucker and Bragg a key. As a result of this incident, no appraisal of the property was made and the loan with FmHA was not finalized.

On these facts the trial judge nonsuited Champion, holding "there has been no evidence that the negotiations between Miss Bell and the sellers was [sic] complete" and "there has been no evidence that she could in fact have closed the loan within the contract period."

## I.

As a general rule, a broker has earned his commission when he procures a purchaser who is accepted by the owner of the property and with whom the latter enters into a valid and enforceable contract. *Dantzler Real Estate, Inc. v. Boland,* 276 S. C. 275, 277 S. E. (2d) 705 (1981); *Thomas-McCain, Inc. v. Siter,* 268 S. C. 193, 232 S. E. (2d) 728 (1977). The broker and the owner may, however, make the broker's right to the commission contingent upon the occurrence of certain conditions. *Hamrick v. Cooper River Lumber Co.,* 223 S. C. 119, 74 S. E. (2d) 575 (1953). If the purchaser's performance is made a condition precedent to the owner's obligation to pay the commission, the broker assumes the risk of the purchaser's nonperformance. *Id.*

In this case, the contract between Champion and the Sellers provided the commission was to be paid ". . . if [the] property is sold, conveyed, or otherwise transferred within 90 days after termination of this authority . . . to anyone with whom agent has had negotiations . . . ." In other words, the parties agreed the property must be "sold" as a condition precedent to the obligation to pay the commission. A sale would be completed when the Sellers had an unconditional right, under a valid contract of sale, to demand performance from a purchaser procured by Champion. *See, Dantzler Real Estate, Inc. v. Boland, supra.* Until that time, the risk of the purchaser's nonperformance was on Champion.

A plaintiff suing on a conditional contract has the burden of proving that all conditions precedent to his right of performance have occurred. *Griffith v. Newell,* 69 S. C. 300, 48 S. E. 259 (1904); Section 15-13-730, Code of Laws of South Carolina, 1976. Thus, a broker who sues for his commission ordinarily has the burden of proving that any conditions precedent to the duty of the seller to pay have been fulfilled. *Record Realty, Inc. v. Hull,* 15 Wash. App. 826, 552 P. (2d) 191 (1976). But if the seller prevents a condition from occurring, then the condition is excused and his obligation to pay becomes unconditional. *Shear v. National Rifle Association of America,* 606 F. (2d) 1251 (D.C. Cir. 1979). This is simply an instance of the general rule that one who prevents a condition of a contract cannot rely on the other party's resulting nonperformance in an action on the contract. *Farrow v. Martin,* 16 S.C.L. (Harp.) 409 (1824); *Young v. Hunter,* 6 N. Y. (2 Selden) 203 (1852); *Fisher v. Drewett,* (1878) 48 L.J.Q.B. 32.

At trial Champion presented evidence which, if believed by the jury, showed Bell was ready, able and willing to consummate the sale. Pat Michelson testified that her office took Bell's financial statement and ran a credit check on her to determine if she was qualified for the loan. According to Michelson, Bell was qualified. Michelson also testified that FmHA allots its money on a quarterly basis, so that FmHA loans normally can be closed out within 120 days. She further stated Bell wanted the house and was willing to close. In the circumstances, Michelson knew no reason why Bell's loan would not have closed before April 6th. Jim Champion testified to the same effect. From this testimony the jury could have inferred that the condition in the sales contract would have been fulfilled, making Bell's obligation to purchase unconditional under that contract. This in turn would satisfy the condition in the exclusive agency contract, giving rise to an unconditional obligation to pay Champion's commission.

There was also evidence from which the jury could have found the condition was prevented by the Sellers' conduct. Prevention of the condition could have been found in at least two ways. First, it was inferable from the testimony of Jim Champion, Pat Michelson, and Ross Cauthen that the FmHA loan was chilled by Cauthen's presence on the premises on

March 19th and his statement to Bragg that he had bought the house. Whether or not the Sellers had actually conveyed the house to Cauthen, since they put him in possession the jury could have found their conduct was a direct cause of Bell's inability to obtain financing through FmHA. Prevention of the condition in Bell's contract kept the property from being "sold." That in turn resulted in failure of the condition in the exclusive agency contract with Champion.

Second, it was inferable from the testimony of Jim Champion and Cauthen that the Sellers had in fact sold the property to Cauthen in March, 1980. This would have constituted a repudiation of their contract with Bell. *See,* Restatement (Second) of Contracts § 250, comment c, illustration 5 (1979). The Sellers' repudiation breached the contract with Bell and thus directly prevented the condition in the contract with Champion. Where a party's repudiation contributes materially to the nonoccurrence of a condition precedent to his duty of performance, the nonoccurrence of the condition is excused. Restatement (Second) of Contracts § 255 (1979); *cf., Sir Anthony Main's Case* (1596) 5 Rep. 20b, 77 Eng. Rep. 80. Champion's right to the commission would then have become unconditional. *See,* Restatement (Second) of Agency § 445, comment e (1957), cited with approval in *Dantzler Real Estate, Inc. v. Boland, supra.*

The Sellers contend that no commission is due because FmHA would not have had money to lend Bell until well after the date for closing. They base this position on testimony that FmHA sent Bell a letter on January 2, 1980, stating funds might not be available for the loan "for up to nine months." In view of this evidence, the Sellers maintain the sale would not have closed by April 6th as required in the contract. They assert that Champion failed to prove Cauthen's conduct changed the availability of funds from FmHA to Bell.

It is true that Champion had to prove the condition could have occurred if it had not been prevented by the Sellers. *Record Realty, Inc. v. Hull, supra.* However, we agree with the court in *Shear v. National Rifle Association, supra,* that almost all cases in which prevention is alleged will involve speculation as to what would have happened had the defendant's conduct not taken place. 606 F. (2d) at 1257. The defendant cannot take advantage of the uncertainty created by his

own wrongdoing. If it were otherwise, then it would be virtually impossible for a plaintiff to prove a case of prevention.

In view of the difficulties of proof created by the Sellers' own conduct, we hold that Champion was not required to show the loan would have closed "but for" the prevention of the condition. It is sufficient for the plaintiff to present evidence that the defendant's prevention "substantially contributed" to the nonoccurrence of the condition. *See, Shear v. National Rifle Association, supra.* Once he has made such proof, the burden shifts to the defendant. If the defendant can show that the condition would not have occurred regardless of the prevention, then the prevention did not contribute materially to its nonoccurrence and the condition is not excused. This is the rule adopted in the Restatement (Second) of Contracts § 245 (1979), and we approve it as the proper rule in this jurisdiction.

Champion's testimony presented sufficient evidence of prevention to create a question for the jury in this case. Although the jury might well have concluded, as the Sellers argue, that FmHA could not have made funds available to Bell in time for the closing, other reasonable inferences were possible. Champion was entitled to have the jury find the facts.

## II.

The trial judge also erred in holding the Sellers were not bound to pay the commission because negotiations were not complete between Bell and the Sellers. Bell and the Sellers signed a contract of sale on December 7, 1979. At that point nothing was left to negotiate. The parties had reached a final bargain. A valid executory contract had been made, complete in all its essential terms. Only performance remained. While Bell's duty of performance was qualified by the condition that she obtain a 100% FmHA loan, the existence and validity of the contract did not depend upon the happening of the condition. The fact that no duty of performance can arise until the happening of a condition does not make the existence of the contract depend upon its happening, unless the parties so intend. *Harris & Harris Construction Co. v. Crain & Denbo, Inc.,* 256 N. C. 110, 123 S. E. (2d) 590 (1962). Here the Sellers admitted the contract with Bell in their pleadings.

Nevertheless, the Sellers argue the nonsuit was proper on the authority of *Wahl v. Hutto,* 249 S. C. 500, 155 S. E. (2d) 1 (1967). In that case a broker sued for the usual and customary real estate commission on a theory of quantum meruit, claiming that his efforts had brought about a sale between the seller and a willing buyer. The Supreme Court held that even if the prospective buyer had been procured by the broker, the delivery of a bond for title conditioned on the buyer's success in securing adequate financing did not give the broker a right to the commission, because the buyer was unable to obtain financing. The Court found it clear from the testimony that the buyer and seller did not intend to enter a binding contract unless the financing was obtained.

*Wahl v. Hutto* is distinguishable from this case because it involved a condition precedent that went to the formation of the contract. The parties in that case did not intend a contract to come into existence until the condition had occurred. In this case, the condition precedent goes to the duty of performance under the contract, not to its existence. As noted above, the Sellers admitted the existence of the contract with Bell in their pleadings. This is in distinct contrast to *Wahl* where the defendant denied the existence of any contract. Because a valid contract had been made, it was error for the trial judge to nonsuit Champion on the stated ground.

Reversed and remanded for new trial.

SANDERS, C. J., and GARDNER, J., concur.