[No. F004681. Fifth Dist. Nov. 7, 1986.]

OLGA JACOBS, as Administratrix, etc., et al.,
Plaintiffs and Respondents, v.
TENNECO WEST, INC., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exceptions of the Statement of Facts and issues II through III.

**1414**

---

**COUNSEL**

Kuhs & Parker, William C. Kuhs and James R. Parker, Jr., for Defendant and Appellant.

Eyherabide, Pearl, Beckman & Eyherabide, Eyherabide, Pearl & Beckman and Peter W. Beckman for Plaintiffs and Respondents.

## Opinion

**BEST, J.**—This case has a long and tortured history and involves an action by respondents to specifically enforce two contracts dated May 16, 1973, for the sale of agricultural land wherein appellant Tenneco West, Inc. (Tenneco), is the seller and respondents are buyers. The original complaint was filed in 1974. The case proceeded to trial in 1977 and a nonsuit in favor of the original defendants, including the present defendant, Tenneco, was granted by the trial court. In *Jacobs* v. *Freeman* (1980) 104 Cal.App.3d 177 [163 Cal.Rptr. 680] (*Jacobs I*), this court reversed the judgment of nonsuit in favor of Tenneco. In so doing, we concluded that a condition of the contracts (escrow instructions) providing that the escrow would be subject to approval by Tenneco's board of directors "was intended to be a condition precedent to the seller's duty to convey title to the land rather than a condition precedent to the formation of a contract." (*Id.* at p. 189.)

Respondents then filed a third amended complaint alleging the existence of the agreements, that Tenneco failed to submit the agreements to the board for approval or disapproval, and that board approval had been waived or, in the alternative, that the board had ratified the agreements because the funds paid outside of escrow were deposited in Tenneco's general account. The plaintiffs sought specific performance and damages, compensatory as well as exemplary.

Tenneco answered the third amended complaint and alleged, among other things, the holdings of *Jacobs I,* and that the board, in the exercise of good faith, would not have approved the sale of the subject property.

The case proceeded to trial for a second time on November 14, 1983. The trial court impaneled an advisory jury at the request of plaintiffs. At the conclusion of the plaintiffs' case-in-chief, the trial court determined that (a) the plaintiffs had presented no evidence of fraud, malice or oppression, (b) Tenneco had not ratified or waived the condition of board approval and was not estopped to assert the lack thereof, and (c) there was no evidence of bad faith on the part of officers of Tenneco. In light of these rulings, only one question was submitted to the advisory jury, to wit: "If the contracts had been submitted to the Board of Directors of Tenneco West, Inc., within a reasonable time after they were signed, would the Board of Directors, having considered these contracts in good faith, have approved or disapproved these contracts?" The advisory jury determined that the board would have approved the agreements. The trial court determined that the jury verdict was supported by the evidence and adopted the verdict as its own. On August 28, 1984, the trial court entered its statement of decision and

its judgment and decree of specific performance. Tenneco timely filed its notice of appeal on September 18, 1984.

STATEMENT OF FACTS*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISCUSSION

I

*Did the trial court correctly interpret Jacobs I when, following a determination that there was no bad faith shown on the part of the officers of Tenneco, it placed the burden on Tenneco to prove that the board would have disapproved the agreements if presented?*

Tenneco contends that the trial court erred in placing on Tenneco the burden of proof with respect to whether the board of directors would have approved the contracts.

The issue of the burden of proof was discussed and argued before the trial court at great length. This argument centered upon the interpretation of footnote 7 at page 191 of *Jacobs I*. In *Jacobs I*, this court held (a) the agreements dated May 16, 1973, constituted contracts (*Jacobs I, supra,* 104 Cal.App.3d 177, 188), (b) there was an implied obligation to submit the agreements to the board and that the board would actually confer (*id.* at p. 190), and (c) Tenneco breached its implied obligation by failing to submit the agreements to the board (*id.* at p. 191). This court also observed at footnote 7 as follows: "As we have noted, under the present record a jury question arises as to whether the board would have approved the sale if the proposal had been presented to the board. The credibility of [Tenneco's] witnesses on this point was for the jury (Evid. Code, § 312, subd. (b)). Furthermore, a jury question may arise as to whether the seller's agents acted in bad faith in not presenting the contract to the board, thereby excusing performance of the condition, as provided in the Restatement of Contracts, section 295. (See 3A Corbin on Contracts, § 769, p. 554.)" (*Ibid.*)

Tenneco contends that the burden of proof with respect to the approval or disapproval of the board would only shift to Tenneco upon a showing by plaintiffs that the responsible officers of Tenneco knowingly acted in bad

---

*See footnote *ante,* page 1413.

faith. No authority is cited for this contention other than Tenneco's interpretation of footnote 7 above.

■ Pursuant to section 245 of the Restatement Second of Contracts, which superseded section 295 of the Restatement of Contracts, it appears that the trial court ruled correctly. Section 245 states, "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." (Rest.2d Contracts, § 245, p. 259.) Comment b to this section discusses the burden of proof. This comment states: "Although it is implicit in the rule that the condition has not occurred, it is not necessary to show that it would have occurred but for the lack of cooperation. It is only required that the breach have contributed materially to the non-occurrence. Nevertheless, if it can be shown that the condition would not have occurred regardless of the lack of cooperation, the failure of performance did not contribute materially to its non-occurrence and the rule does not apply. The burden of showing this is properly thrown on the party in breach."

It should be noted that this section does not differentiate between intentional breaches motivated by ill will or bad faith and other types of breaches. Thus, regardless of whether the breach is malicious, intentional or negligent, under the restatement, the burden of proof is shifted to the breaching party by virtue of the breach itself.

In this action, as established in *Jacobs I,* Tenneco breached the implied covenant of good faith and fair dealing, and thus the contracts, when its officers failed to submit the contracts to the board of directors.

Thus, the burden was properly shifted to Tenneco to prove that the breach did not contribute materially to the nonoccurrence of the condition by showing that the board of directors would not have approved the contracts even had they been submitted to the board in a timely manner.

In its argument that the burden of proof should not have shifted, Tenneco relies heavily on the fact that the trial court found there was absolutely no evidence of "bad faith" on the part of Tenneco in failing to submit the contracts for approval by the board. It is certainly possible, if not probable, that Tenneco's misconception was caused by this court's use of the words "acted in bad faith"[2] instead of "lack of good faith" in footnote 7. Nevertheless, the trial court ruled correctly because the facts in this case establish as a matter of law that Tenneco acted in "bad faith," or more clearly, failed

---

[2]While perhaps a poor choice of words because it appeared to require more than a lack of good faith, the use of this term was not technically incorrect. (See fn. 3, *infra.*)

in its duty of good faith and fair dealing to perform its obligations under the contracts. (See Rest.2d Contracts, §§ 205, 235, 245, pp. 100-101, 212, 258, respectively.)[3] The failure of Tenneco to submit the contracts for approval by the board of directors constituted "bad faith" to the extent that plaintiffs did not assume the risk of such a lack of cooperation or to the extent that the lack of cooperation was not shown to be justifiable. Neither of these exceptions is present here. The only way that Tenneco could avoid the consequences of its breach was to establish that the failure of performance did not contribute materially to the nonoccurrence of the condition. It is clear that the burden was properly shifted to Tenneco at this point. (See *Shear* v. *National Rifle Association of America* (1979) 196 App.D.C. [606 F.2d 1251, 1257]; *Champion* v. *Whaley* (1984) 280 S.C. 116 [311 S.E.2d 404, 407].)

Although it appears that no California cases have discussed the relevant aspects of section 245 of the Restatement Second of Contracts, well established California law concerning nonperformance and affirmative defenses leads to essentially the same result as the rule enunciated in section 245 of the Restatement Second of Contracts.

In *Rains* v. *Arnett* (1961) 189 Cal.App.2d 337, 347 [11 Cal.Rptr. 299], the court held that a person may not take advantage of his own act or omission to escape liability. "If he prevents or makes impossible the performance or happening of a condition precedent, the condition is excused." (Accord *Exchequer Acceptance Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1, 14 [76 Cal.Rptr. 328].) Similarly, in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 868-869 [44 Cal.Rptr. 767, 402 P.2d 839], the court stated, "Each party to a contract has a duty to do what the contract presupposes he will do to accomplish its purpose. [Citation.] Thus, 'A party who prevents fulfillment of a condition of his own obligation . . . cannot rely on such condition to defeat his liability.' [Citations.]" Applying these rules to the present case, it appears that the prevention of the condition of board approval caused by Tenneco's officers' failure to submit the contracts to the board excused that condition.

■ In response, Tenneco has taken the position that the board would not have approved of the contracts, in any case. In essence, Tenneco offers

---

[3]Section 205 provides in pertinent part: "d. *Good faith performance.* Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: *bad faith* may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalog of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." (Italics added.)

an excuse for nonperformance. Such an excuse for nonperformance is an affirmative defense. (*McDonald* v. *Filice* (1967) 252 Cal.App.2d 613, 625, fn. 2 [60 Cal.Rptr. 832].) As an affirmative defense, the burden of proof was upon Tenneco to show that the board of directors, acting in good faith, would not have approved of the transaction had it been submitted to the board in a timely manner.

As stated in *May* v. *Hanson* (1855) 5 Cal. 360, 365, ". . . he who avers a fact in excuse of his own misfeasance, must prove it." (Accord *Finn* v. *Vallejo Street Wharf Co.* (1857) 7 Cal. 253, 255.)

Therefore, the trial court did not err in shifting the burden of proof to Tenneco on this issue.

### II-III*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

This cause is remanded to the trial court with directions to amend its judgment by allowing appellant, Tenneco West, Inc., to offset its administrative expenses as shown by defendant's exhibit J against its actual rental receipts, by allowing respondents to deduct the sum of $131,886 from the unpaid purchase price upon which offsetting interest is calculated, and by calculating interest at the contract rate of 9 percent.

In all other respects, the judgment is affirmed. Respondents to have their costs on appeal.

Hanson (P. D.), Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied December 5, 1986.

---

*See footnote *ante*, page 1413.