**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 11 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUDY CODDING,

Plaintiff-Appellant,

v.

PEARSON EDUCATION, INC.,

Defendant-Appellee.

No.    19-17454

D.C. No. 3:18-cv-00817-LB

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted December 9, 2020*
San Francisco, California

Before:  BOGGS,** M. SMITH, and BENNETT, Circuit Judges.
Dissent by Judge BENNETT

Appellant Judy Codding (Dr. Codding) appeals the district court's orders

dismissing her claim for anticipatory breach against Appellee Pearson Education,

Inc. (Pearson Education) and granting summary judgment in Pearson Education's

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

favor on her claim for breach of contract. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) and its decision to grant summary judgment *de novo*. *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018); *Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016). We AFFIRM.

Dr. Codding's claims relate to bonus payments available to her under an employment agreement with Pearson Education. The agreement provided that Dr. Codding would develop education-course offerings known as the "Pearson System of Courses" (PSoC). The agreement provided Dr. Codding an initial $1 million payment and set forth a bonus structure if PSoC sales met or exceeded certain dollar amounts. Dr. Codding would receive an additional $3 million lump-sum bonus if PSoC sales exceeded $75 million. Dr. Codding would also receive a 2% royalty for PSoC sales beyond the initial $75 million sales threshold. Dr. Codding could accrue royalties up to a ceiling of $3 million, but her initial $1 million bonus would count against her royalties, thus allowing her to accrue up to a net $2 million in royalties. Dr. Codding was therefore eligible to receive a maximum bonus of up to $5 million if PSoC sales were $225 million, in addition to the initial bonus of $1 million that

she previously received.

1.     Dr. Codding contends that the district court erred by granting Pearson Education's motion to dismiss with respect to her claim for anticipatory breach. "An anticipatory breach of contract occurs on the part of one of the parties to the [contract] when [it] positively repudiates the contract by acts or statements indicating that [it] will not or cannot substantially perform essential terms [of the contract]." *Guerrieri v. Severini*, 330 P.2d 635, 638 (Cal. 1958) (citations omitted). Dr. Codding does not contend that Pearson Education expressly repudiated the contract by expressing "a clear, positive, unequivocal refusal to perform." *Taylor v. Johnston*, 539 P.2d 425, 430 (Cal. 1975) (citations omitted). Instead, she relies on implied repudiation: "conduct where the promisor puts it out of [its] power to perform so as to make substantial performance of [its] promise impossible." *Id.*

The district court did not err by dismissing Dr. Codding's anticipatory-breach claim. The Second Amended Complaint does not allege any facts that plausibly suggest Pearson Education put it out of his power to sell PSoC so as to make substantial performance of its alleged promise impossible. Instead, the Second Amended Complaint focuses on Pearson Education's past performance and its past efforts to sell PSoC, which relate to ordinary breach, not anticipatory breach. Because Dr. Codding did not plead the elements of an anticipatory-breach claim, the district court did not err by dismissing that claim.

3

2.     Dr. Codding also contends the district court erred by granting Pearson Education's motion for summary judgment on her claim for breach of contract. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citations omitted).

On summary judgment, "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to produce evidence supporting its claims. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

Causation between breach and damage is an essential element of a claim for breach of contract and breach of the implied covenant of good faith and fair dealing. *Thompson Pac. Constr., Inc. v. City of Sunnyvale*, 155 Cal. App. 4th 525, 541 (2007); *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233–34 (1997). Therefore, Dr. Codding bears the burden of "establish[ing] a causal connection between the breach and the damages sought." *Thompson*, 155 Cal. App. 4th at 541 (quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) ch. I, § 870). In addition, Dr. Codding

bears the burden of establishing damages with "reasonable certainty and probability." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) (quoting *Caminetti v. Manierre*, 142 P.2d 741, 745 (Cal. 1943) (in bank); citing *Hacker Pipe & Supply Co. v. Chapman Valve Mfg. Co.*, 61 P.2d 944, 946 (Cal. Ct. App. 1936)).

Dr. Codding cannot withstand Pearson Education's motion for summary judgment because she presented no competent evidence to prove causation and damages. Pearson Education satisfied its initial burden by pointing out that Dr. Codding had no evidence that any additional efforts by Pearson Education would have resulted in sales above the threshold required for her bonus and royalties. Importantly, to survive summary judgment, Dr. Codding would need to provide some evidence of causation—*i.e.*, that Pearson Education's actions or inactions caused sales not to exceed $75 million—not simply that the alleged breach resulted in "lower" sales because she would only receive compensation if sales went above the $75 million threshold (other than the $1 million she already received).

However, Dr. Codding submits no competent evidence about what PSoC sales would have been if Pearson Education had used its arguable best efforts to sell PSoC, much less evidence that those sales would have exceeded $75 million. Instead, Dr. Codding contends that Pearson Education bears the burden to disprove causation under *Jacobs v. Tenneco West, Inc.*, 186 Cal. App. 3d 1413 (1986). But *Jacobs*

5

would not excuse Dr. Codding's failure to offer any evidence establishing damages with "reasonable certainty and probability" at summary judgment, which is an essential element of her breach-of-contract claim. *See Caminetti*, 142 P.2d at 744–45. In addition, *Jacobs* does not operate to shift the burden to Pearson Education to disprove causation for several reasons.

First, *Jacobs* is distinguishable. The plaintiff in *Jacobs* sought specific performance of the sale of agriculture land, and the undisputed facts demonstrated that the defendant-seller prevented that sale in "bad faith" by refusing to submit escrow instructions for board approval as the contract required. *Jacobs v. Tenneco W., Inc.*, 186 Cal. App. 3d 1413, 1417–18 (1986). Here, Dr. Codding seeks an unspecified amount of damages (up to $5 million) from Pearson Education, and that amount is unspecified because she presented no evidence as to what sales could or should have been and whether such sales would reach her bonus targets without the alleged breach.[1] Excusing the purported condition precedent to Dr. Codding

---

[1] The dissent argues that "Dr. Codding alleges that Pearson Education's breach . . . caused the nonoccurrence of a condition that would have benefitted her if satisfied—specifically, the sale of $75 million of PSoC, which would have entitled her to additional bonuses. . . . [And that] Dr. Codding's Second Amended Complaint requests a specific amount of damages, calculated based on the bonuses to which she would have been contractually entitled *had* the PSoC sales met the requisite threshold . . . ." Dissent at 2–3. However, Dr. Codding actually argues we should excuse the purported condition to sell $225 million of PSoC, and that she should get the full "benefit of the bargain," *i.e.*, $5 million in addition to the $1 million she already received. But she cannot recover $3 million (for $75 million in sales) nor $5

6

receiving her bonus payments—selling between $75 million and $225 million worth of PSoC—would unreasonably extend *Jacobs*'s reasoning that only excused board approval of escrow instructions. We have found no California authority extending *Jacobs* to the facts presented here, and to do so would, in effect, remove causation and damages from a plaintiff's *prima facie* case of breach of contract every time he or she purports to create a triable issue on breach.

Second, Dr. Codding did not present undisputed evidence that Pearson Education breached its obligations under the contract. Instead, the record suggests that the parties considered and declined to impose, a covenant to make reasonable commercial efforts to sell, due to technical difficulties with the product.

Third, even if the covenant applies to Pearson Education, the evidence is not undisputed in Dr. Codding's favor on breach of that covenant. Instead, the record reveals Pearson Education made significant efforts, and lost significant money, trying to develop and sell PSoC. Notably, Dr. Codding's counsel conceded at oral argument that Pearson Education spent approximately $45.6 million dollars since 2016 to develop the product. Therefore, if *Jacobs* applied, this case would likely fall under the two exceptions identified in *Jacobs* that plaintiffs assumed the risk of a lack of sales or that the lack of sales was justifiable—*i.e.*, it tried but could not

---

million (for $225 million in sales) because she presented no evidence to establish either amount with "reasonable certainty and probability." *See Vestar Dev. II*, 249 F.3d at 96 (citations omitted).

7

achieve the sales goals due to technical difficulties with the product. *See id.* at 1418.

Accordingly, the district court did not err by placing the burden of proof on Dr. Codding for each element of her claim—including causation and damages. *See McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989) ("A fundamental rule of law is that whether the action be in tort or contract compensatory damages cannot be recovered unless there is a causal connection between the act or omission complained of and the injury sustained." (internal quotation marks and citations omitted)).

**AFFIRMED.**

*Codding v. Pearson Education*, No. 19-17454

BENNETT, Circuit Judge, dissenting:

I respectfully dissent. I believe *Jacobs v. Tenneco West, Inc.*, 231 Cal. Rptr. 351 (Ct. App. 1986), applies to this case and shifts the burden of proof on causation from Dr. Codding to Pearson Education. Thus, it was improper for the district court to grant summary judgment in favor of Pearson Education merely because Dr. Codding presented no evidence of causation or damages.

In *Jacobs*, a California court of appeal adopted the following rule from the Restatement (Second) of Contracts: "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused. . . . Nevertheless, if it can be shown that the condition would not have occurred regardless of the lack of cooperation, the failure of performance did not contribute materially to its non-occurrence and the rule does not apply." *Id.* at 353 (quoting Restatement (Second) of Contracts § 245 (Am. Law Inst. 1981)). The court (echoing the Restatement) was very clear regarding which party bears the burden of proving whether the failure of performance materially contributed to the non-occurrence of the condition: "The burden of showing this is properly thrown on the party in breach." *Id.* (citation omitted). Accordingly, the court in *Jacobs* held that "the burden was properly shifted" to the defendant to prove that its breach of the implied covenant of good faith and fair dealing "did not

1

contribute materially to the nonoccurrence of [a] condition" that would have otherwise benefitted the plaintiff—in *Jacobs*, submitting contracts to a board of directors for approval. *Id.* Even though the defendant had "taken the position that the board would not have approved of the contracts, in any case[,] . . . [s]uch an excuse for nonperformance [was] an affirmative defense. As an affirmative defense, the burden of proof was upon [the defendant] to show that the board of directors, acting in good faith, would not have approved of the transaction had it been submitted to the board in a timely manner." *Id.* at 354.

Like the plaintiffs in *Jacobs*, Dr. Codding alleges that Pearson Education's breach of the implied covenant of good faith and fair dealing caused the nonoccurrence of a condition that would have benefitted her if satisfied— specifically, the sale of $75 million of PSoC, which would have entitled her to additional bonuses. Therefore, as in *Jacobs*, Pearson Education should have the burden of proving that the requisite sales would not have taken place even with reasonable or best efforts—unless it can demonstrate that it owed no contractual duty to use reasonable or best efforts. And here, the district court expressly declined to decide whether Pearson Education owed Dr. Codding such a duty.

The majority concludes that *Jacobs* is distinguishable—first, because the plaintiff there sought specific performance, whereas Dr. Codding seeks an "unspecified amount of damages from Pearson Education, and that amount is

2

unspecified because she presented no evidence as to what sales could or should have been and whether such sales would reach her bonus targets without the alleged breach."[1] Majority at 6. If the majority is suggesting that the *Jacobs* court shifted the burden of proof only because causation was more obvious there than it is in Dr. Codding's case, I respectfully disagree. The *Jacobs* court shifted the burden of proof even though it was unclear whether "the board would . . . have approved of the contracts" without the defendant's breach, 231 Cal. Rptr. at 354—just as it is unclear in this case "whether [PSoC] sales would [have] reach[ed] [Dr. Codding's] bonus targets without the alleged breach," Majority at 6. I also disagree with the characterization of Dr. Codding's claimed damages as "unspecified." Dr. Codding's Second Amended Complaint requests a specific amount of damages, calculated based on the bonuses to which she would have been contractually entitled *had* the

---

[1] The majority adds that we cannot reverse the summary judgment for Pearson Education because Dr. Codding "argues we should excuse the purported condition to sell $225 million of PSoC, and that she should get the full 'benefit of the bargain.'" Majority at 6 n.1. I agree that Dr. Codding is not entitled to win the entire case at summary judgment. However, as an alternative, Dr. Codding also requests that "[a]t a minimum," we vacate the grant of summary judgment and remand for trial on the merits. I would remand for the district court to first determine whether Pearson Education owed a duty of reasonable or best efforts. If it determined there was no such duty, then the case would be over (unless the district court found, for some reason, that that issue could be determined only by the trier of fact). If the district court found there was such a duty, it would then determine, with the burden of proof on causation properly shifted to Pearson Education, whether Dr. Codding survives summary judgment. I cannot see how the fact that Dr. Codding asks for more relief than she is entitled to on appeal bars her from the obtaining the relief to which she *is* entitled.

3

PSoC sales met the requisite threshold, just as the plaintiffs in *Jacobs* requested the specific performance they would have been entitled to *had* the board approved the contracts. In both cases the causal connection was not entirely clear, but the damages calculation was—assuming (under the burden shift) that there was a causal connection to begin with. Therefore, I can find no basis—in principle, and certainly not in *Jacobs*—to use the majority's first distinction to limit the broad rule that *Jacobs* sets out (which would shift the burden here were there a duty to use reasonable or best efforts).[2]

---

[2] In fact, Section 245 of the Restatement (Second) of Contracts, which *Jacobs* expressly adopted, makes clear through an illustration that the burden shift should apply to situations nearly identical to Dr. Codding's:

> A, the owner of a manufacturing plant, contracts to transfer the plant to B. B is to pay A $500,000 plus a bonus of $100,000 if the profits from the plant exceed a stated amount during the first year of its operation. Six months after the transfer B sells the plant to C, who dismantles it. B refuses to pay the bonus. Whether A has a claim against B depends on whether B's failure to operate the plant for a year is a breach of his duty of good faith and fair dealing which contributed materially to the non-occurrence of the condition, the profits exceeding the stated amount during the first year, excusing it. The fact that A cannot show that the profits would otherwise have exceeded the stated amount does not prevent him from recovering. If, however, B shows that they would not have exceeded that amount, A cannot recover.

Restatement (Second) of Contracts § 245 cmt. b, illus. 6. Like "A" in the above illustration, Dr. Codding alleges that Pearson breached an implied covenant of good faith and fair dealing by failing to use best or reasonable efforts to sell PSoC. Like "B," Pearson Education should have the burden of showing that the PSoC sales would not have exceeded the requisite amount even if it had used best or reasonable efforts.

4

As a second point of distinction, the majority notes that in *Jacobs*, "the undisputed facts demonstrated that the defendant-seller prevented that sale in 'bad faith.'" Majority at 6. The majority then faults Dr. Codding for failing to present "undisputed evidence that Pearson Education breached [its] obligations under the contract," noting that "the record suggests that the parties contemplated and declined to impose the covenant to make reasonable commercial efforts," and that "the evidence is not undisputed . . . on breach of that covenant." Majority at 7. However, it is not Dr. Codding's burden to provide "undisputed evidence" of Pearson Education's duty and breach to survive summary judgment. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) (reversing summary judgment where the nonmovant raised a genuine issue of material fact because at "summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion"). Nor is Pearson Education entitled to summary judgment where the record merely "suggests" a finding in its favor—and certainly not where the evidence is "*not* undisputed." *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact . . . .").

Because the district court did not reach either the duty or the breach issue because of its erroneous conclusion that Dr. Codding would have the burden of proof on causation even were there both a duty and breach, and because factual disputes

5

underlie both, I would reverse the district court's grant of summary judgment and remand for further proceedings.