Filed 9/2/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of CHARLES A. JONES, Deceased. | |
| HELEN GRAYS-JONES, Petitioner and Appellant, v. SANDRA SPENCER, as Trustee, etc., Objector and Respondent. | A162543 (San Mateo County Super. Ct. No. 17PRO01298) |

Upon the death of Charles A. Jones (decedent), his daughter, Sandra Spencer, became successor trustee of his trust. His third wife, Helen Grays-Jones, was not included in the trust. Unsurprisingly, this litigation ensued. The parties settled, agreeing the trust would pay Grays-Jones $3 million. But the settlement agreement also provided the money would be paid "out of the escrow from the sale" of specified real property (property). Sale of the property — pending at the time the parties reached their agreement — fell through. Escrow never closed, and Spencer, as trustee, never paid the $3 million. Did the collapse of the sale void Spencer's promise to pay?

The answer is no. We conclude the settlement agreement contained a condition precedent as to the *method of payment*, but Spencer's independent promise to pay $3 million is enforceable and remains payable upon the property's sale. We reverse and remand.

1

# BACKGROUND

In 1999, decedent established, and later restated, the Charles A. Jones Trust (trust) and named Spencer successor trustee. The property — where decedent had operated a mortuary — was the trust's principal asset. In 2006, decedent married Grays-Jones, but he did not amend the trust to include her.

In 2017, decedent entered into an agreement to sell the property to Calvano Development, Inc. (CDI), a real estate developer, for $13.6 million. The decedent died shortly thereafter, while the property was in escrow. Spencer became successor trustee.

A few months later, Grays-Jones petitioned for an interest in decedent's estate as an omitted spouse (Prob. Code, § 21610). In 2019 — and while the property was still in escrow — Grays-Jones and Spencer, as trustee, reached a settlement. They agreed the trust "shall pay to [Grays-Jones] a total of $3,000,000 . . . as her full and final settlement of [Grays-Jones's] interest in the Estate. Payment of said amount shall be paid to [Grays-Jones] out of the escrow from the sale of the [property]." The parties also agreed Grays-Jones would move out of decedent's residence in exchange for $150,000, which would constitute "an advance against the total settlement amount."

Shortly thereafter, the trial court entered a stipulated judgment incorporating the settlement, and the parties initially complied with their obligations. That is, Spencer, as trustee, paid Grays-Jones a $150,000 advance on the $3 million, and Grays-Jones moved out of decedent's residence. But three months after judgment was entered, the sale of the property fell through, and Spencer did not pay Grays-Jones the outstanding $2.85 million.

In 2020, Grays-Jones petitioned the trial court to enforce the stipulated judgment. (Code Civ. Proc., § 664.6.) Grays-Jones alleged Spencer frustrated

2

the sale of the property, and she requested the court appoint a temporary trustee to sell the decedent's residence and the property. Grays-Jones also requested the temporary trustee pay her $2.85 million from the sale proceeds, plus interest, costs, and attorney fees. Spencer opposed the petition.

The trial court denied the petition to enforce the stipulated judgment. It concluded the settlement agreement — and, consequently, the judgment — were unenforceable. Relying on what it deemed the unambiguous language in the settlement agreement, and declining to consider extrinsic evidence, the court determined the $3 million "was to be paid from the escrow proceeds from the sale of the property. That set up an implied condition precedent to the settlement agreement . . . . The condition precedent never materialized." The court also found there "was no independent promise to pay $3 million in that there was to be one fund from which the $3 million would be paid. That fund never materialized." Accordingly, there was "nothing . . . for the court to enforce." The court ordered the parties to mediation.

## DISCUSSION

Code of Civil Procedure section 664.6 authorizes the trial court to enter judgment incorporating terms of a settlement agreement if parties stipulate in writing to settle the case and, if requested, retain jurisdiction to enforce its judgment. (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182.) On a motion to enforce, the court must determine whether the settlement agreement is valid and binding. (*Ibid*.) The court assesses whether the material terms of the settlement were reasonably well-defined and certain, and whether the parties expressly acknowledged that they understood and agreed to be bound by those terms. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911.) It may interpret the settlement terms and conditions, but it cannot impose terms to

3

which the parties did not agree. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810.)

Stipulated judgments are interpreted according to contract principles. (*Jamieson v. City Council of the City of Carpinteria* (2012) 204 Cal.App.4th 755, 761.) When interpreting a contract, courts give effect to the parties' mutual intentions, first examining the contract's plain language. (Civ. Code, § 1636; undesignated statutory references are to this code; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) The language governs if it is clear, explicit, and does not involve absurdity. (*Jamieson*, at p. 761; § 1638.) It must be read in the context of the whole instrument and circumstances of the case. (*Bank of the West*, at p. 1265.) The construction should give effect to all provisions without inserting or omitting text. (Code Civ. Proc., § 1858.) In the absence of extrinsic evidence, as here, interpreting a contract is a matter of law subject to de novo review. (*Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283, 288.)

A "condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313; § 1436.) Conditions precedent may be created either expressly — by words such as "subject to" or "conditioned upon" — or impliedly. (*Minton v. Mitchell* (1928) 89 Cal.App. 361, 368; *Rubin v. Fuchs* (1969) 1 Cal.3d 50, 54.) They are generally disfavored and are strictly construed against a party arguing the agreement imposes one. (*Helzel v. Superior Court* (1981) 123 Cal.App.3d 652, 663.) Courts will not interpret a provision as a condition precedent absent clear, unambiguous language requiring that construction. (*Ibid.*)

4

The trial court concluded the sale of the property was a condition precedent to Spencer owing Grays-Jones $3 million. This was erroneous. The settlement agreement contains two related — but independent — promises, each of which is recited in a separate sentence. The first of the two sentences recites an unequivocal promise that the trust will pay Grays-Jones $3 million. Indeed, in reciting the payment obligation, the agreement uses "shall," a word courts construe as mandatory. (*Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307.) The second sentence specifies the *method of payment* — i.e., that Spencer, as trustee, will pay the money from the escrow account. Thus, Spencer's promise to pay $3 million is independent from — albeit related to — the parties' agreement concerning the source of the funds. (*Owens v. Owens* (1962) 210 Cal.App.2d 705, 706–708 [obligation to consult with the defendant regarding choice of medical provider was not a condition precedent to the defendant's obligation to pay certain medical bills]; see also *Starr v. Davis* (1930) 105 Cal.App. 632, 634–636.) Contrary to Spencer's suggestion, there is no "link" between the two sentences such that the obligation in the first is contingent on the second, and we "cannot insert in the contract language [a term] which one of the parties now wishes were there." (*Levi Strauss & Co. v. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486.)

The trial court was correct, however, that the agreement contains an implied condition precedent — escrow closing on the sale of the property — to the trust *paying* the remaining money. (1 Witkin, Summary of Cal. Law (11th ed. 2022) Contracts, § 814 [identifying examples of conditions precedent]; *Pitzer v. Wedel* (1946) 73 Cal.App.2d 86, 90 (*Pitzer*).) That is, the property is the most valuable asset in the trust, and its sale must occur before the trust can pay the outstanding money. Undisputedly, escrow did

not close because the sale, pending at the time the parties entered into the agreement, fell through.  As such, Spencer, as trustee, cannot pay $3 million *from the escrow of the sale* — as required by the settlement agreement — if the sale has not yet happened.  In sum, the sale of the property was a condition precedent, the satisfaction of which triggered Spencer's obligation to pay the remaining $2.85 million to Grays-Jones from the escrow account.

The trial court also erred when it concluded the failed sale rendered the entire settlement agreement unenforceable.  The agreement is sufficiently definite to determine the parties' respective obligations and to determine whether those obligations have been performed or breached.  (*Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 623 [identifying circumstances for enforcing a contract].)  While payment to Grays-Jones must be "out of the escrow from *the sale* of the [property]," nothing in the agreement specified that CDI be the purchaser (or that the property be sold for $13.6 million), contrary to Spencer's assertions.  (Italics added.)  Even though the sale to CDI fell through, Spencer can nonetheless comply with the agreement by selling the property to another buyer and paying Grays-Jones from the escrow of *that* sale.  If Spencer only intended payment to come out of the escrow from the then-pending sale of the property to CDI, she could have negotiated to incorporate that provision.  (*Ritzenthaler v. Fireside Thrift Co.* (2001) 93 Cal.App.4th 986, 991.)  She did not, and we will not rewrite the agreement to include such a requirement.

Because the settlement agreement does not require the property to be sold to CDI to trigger the obligation to pay the remaining monies owed, the last issue is whether the agreement, and thus the stipulated judgment, are nonetheless enforceable if the condition precedent has not yet occurred.  We conclude that it is — "conditions in a contract, will if possible be construed to

6

avoid forfeiture." (*O'Morrow v. Borad* (1946) 27 Cal.2d 794, 800.) Courts have enforced payment obligations even when payment must be made from a specific fund that has not yet materialized. (*Pitzer*, *supra*, 73 Cal.App.2d at pp. 88–91.) In such circumstances, the "law implies that the contract shall be performed within a reasonable time." (*Id.* at p. 91; § 1657.) Where a contract does not fix a time for payment, "[r]easonable diligence and good faith must be required in such instances and it is the duty of the court to hear evidence and therefrom fix a time which would be fair." (*Pitzer*, at p. 91.) For example, in *Pitzer*, a grantee agreed to pay a third party's debt from crop proceeds, but those proceeds never materialized. (*Id.* at p. 88.) The *Pitzer* court acknowledged "the fund from which the sum was to be paid made the agreement conditional." (*Id.* at p. 90.) Yet because a reasonable time to secure that source of funds had passed, the court held the grantee's payment obligation was now due. (*Id.* at pp. 89–91.)

Here too. The settlement agreement did not fix the time for paying Grays-Jones from the escrow of the sale of the property. And the trial court did not hear extrinsic evidence regarding — among other things — whether a reasonable time has passed to secure the source for those funds.[1] Nor did it make any determinations regarding Spencer's good faith efforts to secure another buyer within a reasonable time or whether the nonoccurrence of the condition precedent may be excused. (*Jacobs v. Tenneco West, Inc.* (1986) 186 Cal.App.3d 1413, 1418–1419.) We remand for the court to exercise its inherent authority to enforce the stipulated judgment, including, where appropriate, making determinations regarding breach and excuse from

---

[1] Grays-Jones does not challenge the trial court's refusal to consider extrinsic evidence. " 'Issues do not have a life of their own: if they are not raised . . . we consider [them] waived.' " (*City of Eureka v. Superior Court* (2016) 1 Cal.App.5th 755, 765, brackets in original.)

performance.  (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 796, fn. 13.)  We express no opinion on how the court should resolve these issues.

In light of this conclusion, we do not address Grays-Jones's remaining arguments.

## DISPOSITION

The order denying enforcement of the stipulated judgment is reversed, and the matter remanded for further proceedings.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Petrou, J.

A162543

9

Superior Court of San Mateo County, Hon. John L. Grandsaert.

Reed Smith, Raymond A. Cardozo; Law Offices of Anthony K. Reid and Anthony K. Reid for Petitioner and Appellant.

Patton Sullivan Brodehl, John H. Patton and Kevin R. Brodehl for Objector and Respondent.